UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA ARENIVAS, | Case No. CV 05-3717-RC |
| Plaintiff, | |
| vs. | OPINION AND ORDER |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Maria Arenivas filed a complaint on May 23, 2005, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on October 18, 2005, and the parties filed a joint stipulation on December 13, 2005.

**BACKGROUND**

**I**

On October 16, 2002 (protective filing date), plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), claiming

an inability to work since January 1, 2001, due to constant fainting attacks, right leg pain, and psychological difficulties. Certified Administrative Record ("A.R.") 43-46, 52. The plaintiff's application was denied initially on March 19, 2003, and was denied again on July 29, 2003, following reconsideration. A.R. 31-41. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Jan Donsbach ("the ALJ") on April 8, 2004. A.R. 42, 184-98. On April 28, 2004, the ALJ issued a decision finding plaintiff is not disabled. A.R. 15-21. The plaintiff appealed this decision to the Appeals Council, which denied review on March 25, 2005. A.R. 5-14.

**II**

The plaintiff, who was born in Mexico on March 27, 1950, and immigrated to the United States when she was ten, is currently 55 years old. A.R. 44. She has no formal education and cannot read or write; however, she has previously worked as janitor, packer and care giver. A.R. 53, 58, 66-73, 187-89.

On June 11, 2002, plaintiff was examined and diagnosed with peripheral neuropathy, etiology unclear. A.R. 145. The plaintiff was subsequently hospitalized on October 14-15, 2002, due to complaints of chest pain, A.R. 97-112, and was then diagnosed with dyspepsia[1] and likely gastroesophageal reflux disease, as well as a history of

---

[1] Dyspepsia is an "impairment of the power or function of digestion; usually applied to epigastric discomfort following meals." Dorland's Illustrated Medical Dictionary, 556 (29th ed. 2000).

2

hypertension. A.R. 98-99. A chest x-ray was negative and electrocardiograms were normal. A.R. 107, 111-12. On October 28, 2002, the diagnosis of gastroesophageal reflux disease was confirmed, and it was determined that that disease could be managed on Prevacid.[2] A.R. 142. An abdominal and pelvic CT scan taken March 11, 2003, showed no significant abnormality. A.R. 159.

On March 31, 2003, plaintiff was also diagnosed with depression and dizziness, and was prescribed Prozac.[3] A.R. 175.[4] On June 23, 2003, Marcos Garcia, M.D., found plaintiff's hypertension was well-controlled and asymptomatic, and Prozac was helping plaintiff's depression. A.R. 173. On August 22, 2003, M. Lombard, M.D., diagnosed plaintiff with depression and myalgias,[5] probably secondary to depression and anxiety, and found plaintiff's hypertension to be stable. A.R. 170. Chest x-rays taken November 7, 2003, showed left ventricular hypertrophy,[6] and left knee x-rays taken the same day

---

[2] "Prevacid blocks the production of stomach acid." The PDR Family Guide to Prescription Drugs, 534 (8th ed. 2000).

[3] "Prozac is prescribed for the treatment of [major] depression — that is, a continuing depression that interferes with daily functioning." The PDR Family Guide to Prescription Drugs at 554.

[4] Between November 5, 2003, and February 17, 2004, plaintiff was also prescribed Risperdal, A.R. 164-66, which "is prescribed to treat severe mental illnesses such as schizophrenia." The PDR Family Guide to Prescription Drugs at 586.

[5] Myalgia means "pain in a muscle or muscles." Dorland's Illustrated Medical Dictionary at 1162.

[6] Hypertrophy is "the enlargement or overgrowth of an organ or part due to an increase in size of its constituent cells."

1  showed mild osteoarthritis.  A.R. 176.

2

3      On February 12, 2003, Rocely Ella Tamayo, M.D., examined
4  plaintiff and found her hypertension was controlled with medication,
5  and determined plaintiff has no significant functional limitations.
6  A.R. 114-18.  On February 22, 2003, Nora R. Paculdo, M.D., a
7  psychiatrist, examined plaintiff and diagnosed her with depression
8  (not otherwise specified) and determined plaintiff's Global Assessment
9  of Functioning ("GAF") to be 70.[7]  A.R. 121-23.  Dr. Paculdo opined:

10

11       The [plaintiff] can care for her own grooming, hygiene and
12       personal affairs.  She is able to do activities
13       independently and appropriately.  She can assist with the
14       household chores, such as cleaning, cooking, shopping and
15       laundry.  [¶]  [Plaintiff's] daily activity is watching TV
16       and cleaning.  She can interact appropriately and
17       communicate effectively with family, friends and neighbors.
18       [¶]  [Plaintiff] can sustain focus[,] attention, complete
19       everyday routine, follow and understand simple to complex
20       instructions.  She has the ability to adapt to stresses
21       common to work environment.

22

---

Dorland's Illustrated Medical Dictionary at 859.

      [7]  A GAF of 70 indicates "[s]ome mild symptoms (e.g.,
depressed mood and mild insomnia) or some difficulty in social,
occupational, or school functioning (e.g., occasional truancy, or
theft within the household), but generally functioning pretty
well, has some meaningful interpersonal relationships."  American
Psychiatric Association, Diagnostic and Statistical Manual of
Mental Disorders, 34 (4th ed. (Text Revision) 2000).

4

A.R. 123.

In mid-2003, nontreating, nonexamining physicians, J. Lee, M.D., and Franklin Kalmar, M.D., opined that plaintiff has a non-severe physical impairment, A.R. 120, 163, and nontreating, nonexamining physicians, Paul Balson, M.D., and K. Gregg, M.D., opined that plaintiff has a non-severe affective disorder. A.R. 124-38, 162. Further, Drs. Balson and Gregg opined that plaintiff has no restriction in her activities of daily living, no difficulties in maintaining social functioning or maintaining concentration, persistence, or pace, and there is insufficient evidence to ascertain whether plaintiff has experienced episodes of decompensation. A.R. 134.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or

1 reversing the [Commissioner's] conclusion, the court may not
2 substitute its judgment for that of the [Commissioner]."  Reddick, 157
3 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir.
4 2002).

6   The claimant is "disabled" for the purpose of receiving benefits
7 under the Act if she is unable to engage in any substantial gainful
8 activity due to an impairment which has lasted, or is expected to
9 last, for a continuous period of at least twelve months.  42 U.S.C. §
10 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the
11 burden of establishing a prima facie case of disability."  Roberts v.
12 Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122
13 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

15   Regulations promulgated by the Commissioner establish a five-step
16 sequential evaluation process to be followed by the ALJ in a
17 disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ
18 must determine whether the claimant is currently engaged in
19 substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the
20 **Second Step**, the ALJ must determine whether the claimant has a severe
21 impairment or combination of impairments significantly limiting her
22 from performing basic work activities.  20 C.F.R. § 416.920(c).  If
23 so, in the **Third Step**, the ALJ must determine whether the claimant has
24 an impairment or combination of impairments that meets or equals the
25 requirements of the Listing of Impairments ("Listing"), 20 C.F.R. §
26 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the
27 **Fourth Step**, the ALJ must determine whether the claimant has
28 sufficient residual functional capacity despite the impairment or

various limitations to perform her past work.  20 C.F.R. § 416.920(f).
If not, in **Step Five**, the burden shifts to the Commissioner to show
the claimant can perform other work that exists in significant numbers
in the national economy.  20 C.F.R. § 416.920(g).

    Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).  First, the ALJ must determine the presence or absence of certain medical findings relevant to the ability to work.  20 C.F.R. § 416.920a(b)(1).  Second, when the claimant establishes these medical findings, the ALJ must rate the degree of functional loss resulting from the impairment by considering four areas of function: (a) activities of daily living; (b) social functioning; (c) concentration, persistence, or pace; and (d) episodes of decompensation.  20 C.F.R. § 416.920a(c)(2-4).  Third, after rating the degree of loss, the ALJ must determine whether the claimant has a severe mental impairment.  20 C.F.R. § 416.920a(d).  Fourth, when a mental impairment is found to be severe, the ALJ must determine if it meets or equals a Listing.  20 C.F.R. § 416.920a(d)(2).  Finally, if a Listing is not met, the ALJ must then perform a residual functional capacity assessment, and the ALJ's decision "must incorporate the pertinent findings and conclusions" regarding plaintiff's mental impairment, including "a specific finding as to the degree of limitation in each of the functional areas described in [§ 416.920a(c)(3)]."  20 C.F.R. § 416.920a(d)(3), (e)(2).
//

1   Applying the five-step sequential evaluation process, the ALJ
2 found plaintiff has not engaged in substantial gainful activity since
3 the filing of her application.  (Step One).  The ALJ then found
4 plaintiff has hypertension, gastroesophageal reflux disease, and a
5 mental impairment; however, none of these conditions is severe (Step
6 Two).[8]  Therefore, the ALJ concluded plaintiff is not disabled.  A.R.
7 21.  However, plaintiff contends the ALJ's determination is not
8 supported by substantial evidence.
9
10                                   **IV**
11   The Step Two inquiry is "a de minimis screening device to dispose
12 of groundless claims."  Smolen, 80 F.3d at 1290; Edlund v. Massanari,
13 253 F.3d 1152, 1158 (9th Cir. 2001).  The Supreme Court has recognized
14 that including a severity requirement at Step Two of the sequential
15 evaluation process "increases the efficiency and reliability of the
16 evaluation process by identifying at an early stage those claimants
17 whose medical impairments are so slight that it is unlikely they would
18 be found to be disabled even if their age, education, and experience
19 were taken into account."  Bowen v. Yuckert, 482 U.S. 137, 153, 107
20 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987).  However, an overly stringent
21 application of the severity requirement violates the Social Security
22 Act by denying benefits to claimants who do meet the statutory
23 definition of disabled.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir.
24 1994).
25 _____
26   [8]  In making this finding, the ALJ also found plaintiff has
only "mild restrictions in her activities of daily living, "mild"
27 difficulties maintaining social functioning and "mild"
difficulties maintaining concentration persistence or pace."
28 A.R. 19-20.

                                     8

1    A severe impairment or combination of impairments within the
2 meaning of Step Two exists when there is more than a minimal effect on
3 an individual's ability to do basic work activities.  Mayes v.
4 Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Edlund, 253 F.3d at
5 1159; see also 20 C.F.R. § 416.921(a) ("An impairment or combination
6 of impairments is not severe if it does not significantly limit [a
7 person's] physical or mental ability to do basic work activities.").
8 Basic work activities are "the abilities and aptitudes necessary to do
9 most jobs," including physical functions such as walking, standing,
10 sitting, lifting, pushing, pulling, reaching, carrying or handling, as
11 well as the capacity for seeing, hearing and speaking, understanding,
12 carrying out, and remembering simple instructions, use of judgment,
13 responding appropriately to supervision, co-workers and usual work
14 situations, and dealing with changes in a routine work setting.  20
15 C.F.R. § 416.921(b).  If the plaintiff meets his burden of
16 demonstrating he suffers from an impairment affecting his ability to
17 perform basic work activities, "the ALJ *must* find that the impairment
18 is 'severe' and move to the next step in the SSA's five-step process."
19 Edlund, 253 F.3d at 1160 (emphasis in original).

21    Here, the medical evidence establishes that plaintiff's physical
22 complaints of hypertension and gastroesophageal reflux disease are
23 well-controlled with medications, see, e.g., A.R. 142, 170, 173, and,
24 thus, they have absolutely no effect on plaintiff's ability to perform
25 work-related activities.  See Montijo v. Sec. of Health & Human
26 Servs., 729 F.2d 599, 600-01 (9th Cir. 1984) (per curiam) (no severe
27 physical impairment where claimant's condition controlled with
28 medication); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983)

9

1  (impairment that can be reasonably controlled with medication cannot
2  support disability finding).  To the contrary, Dr. Tamayo, the only
3  treating or examining physician to consider whether plaintiff's
4  physical complaints affect her ability to work, concluded plaintiff
5  has no significant physical limitations.  A.R. 117.

7       Similarly, plaintiff's depression is controlled by medications,
8  and Dr. Remington's restatement of plaintiff's subjective complaints
9  is insufficient to establish a severe mental impairment.  Ukolov v.
10 Barnhart, 420 F.3d 1002, 1004-06 (9th Cir. 2005).  Moreover, when most
11 recently examined on February 26, 2004, plaintiff's depression was
12 found to be stable with medication.  A.R. 167.  Furthermore, Dr.
13 Paculdo, the only treating or examining physician to consider whether
14 plaintiff's mental complaints affect her ability to work, found
15 plaintiff has no impairment in her ability to perform basic work
16 activities.  A.R. 123.  Indeed, the opinions of examining physicians
17 Drs. Tamayo and Paculdo, as well as the opinions of nontreating,
18 nonexamining physicians Drs. Balson, Gregg, Kalmer, and Lee, uniformly
19 show plaintiff does not have a severe impairment or combination of
20 impairments.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.
21 2001) (examining physician's medical report based on independent
22 examination of claimant constitutes substantial evidence to support
23 ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522
24 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining
25 physician can amount to substantial evidence, so long as other
26 evidence in the record supports those findings."), cert. denied,
27 519 U.S. 1113 (1997).  Thus, substantial evidence supports the ALJ's
28 //

10

Step Two determination that plaintiff's complaints are not severe, and also supports the ALJ's conclusion that plaintiff is not disabled.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:   January 19, 2006             /s/ Rosalyn M. Chapman
                                        ROSALYN M. CHAPMAN
                                  UNITED STATES MAGISTRATE JUDGE

R&R-MDO\05-3717.MDO
1/19/06